UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK



Edwin Guerrier,
          Petitioner

v.

E. Rickard, Warden FCI Otisville,
          Respondent

MOTION PURSUANT TO 28 U.S.C. § 2241

*** EMERGENCY RELIEF REQUESTED ***

Edwin Guerrier, Pro Se
Reg. No. 85474-054
FCI Otisville
P.O. Box 1000
Otisville, NY  10963

Comes now Petitioner, Edwin Guerrier, who files this motion under 28 U.S.C. §2241 being held in violation of the First Step Act (12-21-2018) and the adopted provisions of the Second Chance Act incorporated into the First Step Act.

## BACKGROUND

Petitioner was sentenced on 9-23-2020 and arrived at FCI Otisville Camp on 5-11-2021. Under the terms of the First Step Act (hereafter referred to as the FSA), Petitioner's eligibility to receive FSA credits commenced on that date, 5-11-2021.

Accordingly, Petitioner should have been transferred to halfway house / home confinement (hereafter referred to as HH/HC) on or about 12-31-2024.

Petitioner filed BP-9, BP-10 and BP-11 grievances under the administrative remedy process. Responses to the BP-9 and BP-10 are attached, but the BP-11 is in process. Petitioner is asking this Honorable Court to hear and rule on this motion since the relief he seeks is being compromised daily should he wait for the response to his BP-11 which undoubtedly will, in any event, be denied.

Due to the nature and timing of this motion, Petitioner prays this Honorable Court to hear this motion on an "emergency basis."

## ARGUMENT

Petitioner argues the Warden at FCI Otisville and the Bureau of Prisons are holding him at Otisville camp (an environment more restrictive) in lieu of his being transferred to HH/HC which he has earned and is entitled to under the law known as the FSA.

The intent, language and specific legal, and logical, application of the FSA dictate Petitioner should have been transferred to HH/HC on or about 12-31-2024.

Furthermore, the documentary evidence provided to Petitioner (copy attached) titled "FSA Time Credit Assessment," which lists assessment date of 9-5-2024 at the bottom, supports Petitioner's claim and clearly shows the B.O.P. understood prior to the issuance date , and understands today, they are in violation of the FSA law.

For decades, the B.O.P. and other federal bureaucracies have enjoyed the protection of "Chevron deference" enabling them to modify aspects of a law to better suit the views and preferred application of said law(s). The B.O.P. has done this repeatedly through their voluminous "Program Statements" which consistently interpret the language of laws in the manner they deem fit, often at the detriment to inmates and even in direct conflict with the law such as recently interpreting the conjunction "and" to mean "or."

However, the recent ruling in Loper/Bright has struck down and eliminated the long standing ability to write "Program Statements" to modify, shape or shade a law in the light most favorable through "Chevron deference."

Nevertheless, the B.O.P. still seems to be under the mis-impression nothing has changed as evidenced by the responses to BP-9 and BP-10 enclosed wherein "Program Statements" (not the law) are used to deny my request(s) for transfer under the FSA.

We are in the seventh year since the FSA was signed into law by then President Donald J. Trump who was barely midway through his term. Since then, we lived through the balance of President Trump's term as President, four years of President Biden's term in office and on January 20, 2025 we began the second elected term of President Trump.

In the interim, the B.O.P. has changed directors at least three times and hundreds of millions (if not billions) were allocated and expended, and the B.O.P. is still not in compliance with the

FSA law.

It is not due to the unclear, unwieldly or confusing nature of
the language of the law. It is not due to the abstract intent of
the law which clearly was designed to reduce overall B.O.P.
population by transferring "eligible" adults in custody to HH/HC
at the earliest possible dates to resume building their familial
and community ties in an effort to dial back the high recidivism
rates which have persisted in years past. It is not due to the
lack of understanding of how to properly apply the FSA law. It
is clear this is not the case since the B.O.P. worked out a
computer program, tested and re-tested it over many months leading
up to the issuance of the B.O.P. wide "FSA Time Credit Assessment"
(attached which was dated 9-5-2024). This documentary evidence
shows the B.O.P. irrefutably understood and understands "what to
do" and "how to do it" and yet they refuse to follow through,
causing Petitioner and thousands of other B.O.P. inmates to lan-
guish in confinement rather than embarking on the course to
rebuild their lives.

There is a well established, fully utilized mathematical model in
use by the B.O.P. upon which to proceed. Every inmate entering the
B.O.P. received a "Computation" sheet at his/her initial classifi-
cation (Team Meeting). This "Computation" shows the inmate's
"Projected Release Date" which is calculated at 85% of the
"statutory" sentence imposed by the court of jurisdiction. It
is referred to as the "Projected Release Date" because an inmate
can lose all, or part, of their 15% Good Time Creidts through
failure to comply with B.O.P. policies and/or procedures.

However, barring any infractions or disciplinary loss of Good Time
Credits, the inmate will reach his/her "Projected Release date" in
85% of the court imposed statutory sentence. This is simple, clear,
straight-forward math.

Likewise, the FSA calculation(s) are clear, simple and straight-

forward. For example, an "eligible" inmate (AIC) enters the
B.O.P. (post sentencing) and he/she has their "initial classi-
fication (Team Meeting) within the first 30 days at which time
he/she is deemed "eligible" to receive FSA credits. From that
point on through the second assessment period (typically six
months later), the inmate earns 10 days/month FSA credits.

Following this approximately seven months total, an "eligible"
inmate earns 15 days/month FSA credits for the remainder of his/
her term of imprisonment whether in a B.O.P. facility or trans-
ferred to HH/HC.

The end point of earning FSA credits is not determined by where
the inmate does his/her time but rather when he/she reaches the
"Release Date" which is 85% of the court imposed sentence. Again,
this is clear, simple, straight-forward math.

Once the total number of FSA credit days is determined (at the
outset a la the 85% Good Time Credit), it is used in a prescribed
manner following the language of the FSA itself.

Accordingly, if an inmate is determined to be "eligible" and his/
her term of incarceration (utilizing the 85% of court imposed
sentence) renders 1000 total FSA credit days until his/her "release
date," then the first 365 FSA credit days (this is the maximum
under the FSA law) will be used to further reduce his/her "release
date" from the "release date" which was 85% of the court imposed
sentence. This becomes the "FSA Projected Release Date."

The remaining 635 FSA credit days (1000 - 365 = 635) are used to
calculate the "FSA Conditional Placement Date" (when he/she "shall"
be transferred to HH/HC) by subtracting the 635 days from the
previously established "FSA Conditional Release Date."

The only remaining calculation to be performed is to further reduce
the inmate's earliest possible transfer to placement in HH/HC by
applying up to 12 months (maximum) for the Second Chance Act (SCA).

The same mathematical formula can be used to calculate these dates for every "eligible" inmate. That is precisely what the B.O.P. did in the computer program they designed and implemented prior to September 2024.

The Petioner's "FSA Time Credit Assessment" sheet dated 9-5-2024 (attached herewith) and the thousands of others published and distributed throughout B.O.P. facilities around the nation on or about 9-5-2024 is documentary proof that the B.O.P. understood prior to the published date, and understands presently, how to calculate the FSA credit days properly and in compliance with the law.

A review of Petitioner's "FSA Time Credit Assessment" sheet (dated 9-5-2024 attached herewith) shows the following dates/calculations:

1) Projected Release Date: 05-29-2029
2) Projected Release Method: GCT REL    *(85%)
3) FSA Projected Release Date: 05-29-2028    **(Maximum 365 Days)
4) FSA Projected Release Method: FSA REL
5) FSA Conditional Release Date: 05-29-2028
6) FSA Conditional Placement Days: 880
7) FSA Conditional Placement Date: 12-31-2025    ***(Subtracting 880 days from 05-29-2028)

8) SCA Proposed Placement Days: N/A

The last entry "SCA Proposed Placement Days: N/A" is marked so because this can vary from 3+ months up to a maximum of 12 months depending mainly on length of sentence and other factors.

Based on Petitioner's length of sentence, work ethic, extensive programming and other factors, Petitioner would qualify for the maximum of 12 months (365 days) "SCA Proposed Placement Days."

Therefore, subtracting said 12 months (365 days) from the "FSA Conditional Placement Date; 12/31/2025" listed on Petitioner's "FSA Time Credit Assessment" sheet, Petitioner should have been

transferred to HH/HC on 12/31/2024.

The denotations of "projected," "conditional" and "proposed" are
meaningful. The adjective "projected" appears in the first four
entries because from the outset (initial team meeting and second
assessment period), these are "projected" into the future.

The term "conditional" which modifies entries 5, 6, and 7 again is
a forecast set of dates. Finally, "proposed" in entry number 8 is
aptly stated because it has to be calculated separately for each
individual and therefore shows as "N/A" which can mean "Not Avail-
able."

The reasons for using "projected" and "conditional" are due to the
fact an inmate can lose all or part of his/her First Step Act (FSA)
credit days through sanctions, incident reports and/or numerous
types of violations of policy(ies) or procedures.

However, if no such snactions, incident reports or violations
occur, the "projections" and "conditional" dates become "actual"
dates when reached. This is not confusing or complicated. It is
simple, direct and straight-forward. Most important, IT IS THE LAW !

CONCLUSION

Petitioner has reached and passed all his "projected" and "condi-
tional" dates without any further reductions for sanctions, incident
reports or violations of policy(ies) or procedures. Therefore,
Petitioner has met all the criteria set out in the FSA law and based
on his length of sentence, work ethic, extensive programming and
other factors is entitled to the 12 months (365 days) maximum
allowed under the Second Chance Act (SCA).

Petitioner should have been transferred to HH/HC on 12/31/2024 as
dictated by the combination of the FSA and SCA laws. Each day which
passes without Petitioner being transferred is a direct violation
of two federal laws.

PRAYER FOR RELIEF

Petitioner prays this Honorable Court issue an order so that he
can be transferred to HH/HC immediately in compliance with the
FSA law and the SCA law. Petitioner also prays for any additional
relief the court deems justified.

ADDENDUM

The A.C.L.U. has now expanded its filed lawsuit against the B.O.P.
for non-compliance with the First Step Act to include "all"
prisoners currently in B.O.P. facilities. The lawsuit alleges,
"the lawsuit contends that the B.O.P.'s failure to implement the
First Step Act according to its plain language violates the rights
of thousands of prisoners who should be returning to their commu-
nities and rebuilding their lives but instead remain incarcerated."

"Through the First Step Act, Congress unambiguously ordered the
B.O.P. to move people out of prison when they meet certain re-
quirements to use their earned time credits. Instead of faithfully
following the mandatory law, the B.O.P. adopted a regulation
treating the law as optional. As a result, thousands of people,
who should already be back in their communities and with their
families, remain in prison."

"Every extra unlawful day our clients spend in prison is a serious
injustice" said Emma Andersson, deputy director of the Criminal
Law Reform Project at the A.C.L.U.

Sincerely Submitted, this 23 day of January, 2025 by

Edwin Guerrier, Pro Se
Reg. No. 85474-054

## FSA Time Credit Assessment
Register Number:85474-054, Last Name:GUERRIER

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 85474-054 | Responsible Facility: OTV |
| Inmate Name | Assessment Date.....: 09-05-2024 |
|   Last............: GUERRIER | Period Start/Stop...: 05-11-2021 to 09-05-2024 |
|   First...........: EDWIN | Accrued Pgm Days....: 1213 |
|   Middle..........: | Disallowed Pgm Days.: 0 |
|   Suffix..........: | FTC Towards RRC/HC..: 205 |
| Gender..........: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 09-23-2020 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 05-11-2021 | 12-05-2021 | accrue | 208 |

Accrued Pgm Days...: 208
Carry Over Pgm Days: 0
Time Credit Factor.: 10
Time Credits.......: 60

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-05-2021 | 09-05-2024 | accrue | 1005 |

Accrued Pgm Days...: 1005
Carry Over Pgm Days: 28
Time Credit Factor.: 15
Time Credits.......: 510

--- FSA Assessment ---

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | | Factor |
|---|---|---|---|---|---|---|---|
| 001 | 05-11-2021 | 06-08-2021 | ACTUAL | FSA R-LW | 04-28-2021 | 0759 | 10 |
| 002 | 06-08-2021 | 12-05-2021 | ACTUAL | FSA R-LW | 04-28-2021 | 0759 | 10 |
| 003 | 12-05-2021 | 06-03-2022 | ACTUAL | FSA R-LW | 11-14-2021 | 0620 | 15 |
| 004 | 06-03-2022 | 11-30-2022 | ACTUAL | FSA R-LW | 05-08-2022 | 0714 | 15 |
| 005 | 11-30-2022 | 05-29-2023 | ACTUAL | FSA R-LW | 10-29-2022 | 0856 | 15 |
| 006 | 05-29-2023 | 11-25-2023 | ACTUAL | FSA R-LW | 04-16-2023 | 0801 | 15 |
| 007 | 11-25-2023 | 05-23-2024 | ACTUAL | FSA R-LW | 10-03-2023 | 2131 | 15 |
| 008 | 05-23-2024 | 11-19-2024 | ACTUAL | FSA R-LW | 03-31-2024 | 0939 | 15 |

--- Planning ---

Projected Release Date: 05-29-2029
Projected Release Method: GCT REL
FSA Projected Release Date: 05-29-2028
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 05-29-2028
FSA Conditional Placement Days: 880
FSA Conditional Placement Date: 12-31-2025
SCA Proposed Placement Days: N/A

Assessment Date: 09-05-2024        (1)        Assessment# -2144538995

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Guerrier Edwin          85474-054          Camp          F.C.I Otisville
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

See attatched

1/16/25
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C - RECEIPT**

                                      CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

DATE                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN       PRINTED ON RECYCLED PAPER       BP-231(13)
                                         JUNE 2002

I am requesting transfer to RRC/HC at this time based on the intent , language and specific application of the First Step Act Law passed by congress and signed into effect by then President Donald J. Trump on 12/21/18.The time credit assessment sheet issued with the heading (s) Department Of Justice and Federal Bureau Of Prisons  dated 9/5/24 at bottom (copy enclosed) is documentary proof that the BOP understands how to correctly apply the FSA Law.  The only missing calculation from this data sheet is SCA proposed placement days which is marked N/A.  However utilizing  the "RRC placement under the second chance act" scoring sheet (also known as the five point scoring sheet) , I would  qualify for the full 12 months consideration.Due to this 12 months additional consideration for the Second Chance Act , I am entitled to be transferred to  RRC/HC 12/31/24 (FSA conditional placement date: 12/31/25 less 12 months Second Chance Act =12/31/24). As per the  specific language of the FSA, since I am eligible and have reached my qualified date of transfer to RRC/HC, I "shall" be  transferred. Anything less is a direct violation and abrogation of the law.

GUERRIER, Edwin
Reg. No. 85474-054
Appeal No. 1213375-R1
Page One

---

### Part B – Response

You appeal the response of the Acting Warden of FCI Otisville. Specifically, you request an immediate Residential Reentry Center/Home Confinement (RRC/HC) referral based on your projected First Step Act (FSA Time Credits (FTC). You request a review of this matter and RRC/HC placement.

Pursuant to Program Statement 7310.04, <u>Community Corrections Center (CCC) Utilization and Transfer Procedures</u>, when evaluating an inmate for RRC placement, staff weigh several factors in determining a recommendation for placement. Determinations are based on the individual's needs, existing community resources, institutional adjustment, length of sentence, and the need to provide for the safety and security of the general public. Inmates are also considered under the Second Chance Act (SCA), which takes into consideration the resources of the facility, nature and circumstances of the offense, history and characteristics of the offender, statement of the court imposing the sentence, and any pertinent policy statement by the U.S. Sentencing Commission.

Program Statement 5410.01, <u>First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)</u>, establishes criteria and procedures for awarding FTC. Eligible inmates may earn FTCs for successfully participating in and completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs). The Bureau of Prisons (BOP) may apply FTC towards prerelease custody when an inmate has maintained a minimum or low recidivism risk level through his or her last two risk and needs assessments or had a petition to be transferred to prerelease custody or supervised release approved by the Warden. Residential Reentry Center (RRC) and/or Home Confinement (HC) referrals will ordinarily be submitted to the respective Residential Reentry Management (RRM) office 12 months in advance of the inmate's projected release date or at least 60 days prior to the projected RRC/HC placement date, whichever is greater.

A review of your appeal reveals the Acting Warden adequately addressed your request. Since the time of your appeal, the BOP deployed a new planning section on FTC assessments. The planning section contains a Conditional Transition to Community Date, which reflects the earliest date an inmate may transition to the community considering the FSA Conditional Placement Date and the SCA Conditional Placement Date. Due to the potentially high volume of individuals who will be in close to Conditional Transition to Community Dates following this initial implementation, Unit Team will be allotted additional time to request community placement during the first 90 days of implementation.

**Continued on Page Two**

GUERRIER, Edwin
Reg. No. 85474-054
Appeal No. 1213375-R1
Page Two

## Part B - Response

Your October 12, 2024, FTC assessment reflects you have a Conditional
Transition to Community Date of October 27, 2025, and are not within 60
days of expected transition to the community. As such, your RRC/HC referral
will be submitted to the RRM at a later date. However, you have been
identified as an individual requiring Unit Team review during the first
90 day period of implementation, and your review will be conducted prior
to January 1, 2025. This matter has been reviewed. Accordingly, this
response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the General
Counsel, Federal Bureau of Prisons. Your appeal must be received in the
Administrative Remedy Section, Office of General Counsel, Federal Bureau
of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30
calendar days of the date of this response.

Date:  December 13, 2024

AMY BONCHER
Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Admin Remedy # 121337S - F1

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: GUERRIER, Edwin      85474-054      Camp      Otisville, FCI
　　　LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**  I Am Requesting my paperwork for transfer to HWH/HC
Be prepared based on my FSA Time Credit Assessment sheet dated Sept 5, 2024.
This Sheet Stated my FSA Conditional Placement date is December 31, 2025, with 12
months HWH/HC + 2nd chance Act that would make the date December 31, 2024.
The language and intent of the FSA Law states the FSA Credits are to be applied
in the same manner as the GTC - (upfront). If not applied in this manner it
violates the intent of the law. Also there would be excess of days that would be
In excess and not applied to any EARLY Release - Not prison, HWH or HC.
Therefore, I quality for HWH at this time, so please put my paperwork in at this time

10-3-2024
DATE                                         SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE RECEIVED
FEDERAL BUREAU OF PRISONS
OFFICE OF THE REGIONAL COUNSEL

**OCT 15 2024**

NERO - PHILADELPHIA

_____                    _____
DATE                                   REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 121337S - R1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
　　　LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                    BP-230(13)
                          JUNE 2002

Guerrier, Edwin
Register Number:  85474-054
Administrative Remedy Number: 1213375-F1

Part B - Response

This is in response to your Request for Administrative Remedy
received September 24, 2024, in which you request to be
submitted for a Residential Re-entry Center (RRC)placement at
this time.

Pursuant to the Second Chance Act, all adults in custody are
eligible to be referred for RRC placement of up to 365 days.
Additionally, eligible adults in custody can apply earned
Federal Time Credits (FTC)toward RRC placement of home
confinement as appropriate.  Your current release date is
May 29, 2028, via First Step Act Release. To date, you have 205
Federal Time Credits to apply toward RRC placement or home
confinement, as appropriate.  As such, with a recommendation of
up to 365 days pursuant to the Second Chance and applying your
earned federal time credits, it is not appropriate to refer you
for RRC placement at this time.  If any changes occur with the
application of Federal Time Credits and RRC referral
recommendations, we will review and recommend accordingly.

Based on the above information, your request for relief has been
denied. If you are not satisfied with this response, you may
appeal to the Regional Director, Northeast Regional Office,
Federal Bureau of Prisons, U.S. Custom House, 2nd and Chestnut
Street, Philadelphia, Pennsylvania, 19106, within twenty (20)
calendar days of the date of this response.

M. Bridges, Acting Warden                    9-26-24
                                             Date

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ___Guerrier    Edwin       _____    Camp        Otisville FCI___
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST** I am Requesting my paperwork for transfer to Halfway House/Home Confinement via FSA Credit eligibility – calculated on my FSA Time Credit Assessment Sheet dated 9-5-2024 to processed at the time. My supporting documentation is attached for your Review taking my FSA Conditional Placement date is 12-31-25 not including the 12 months Halfway House/Home Confinement aid Second Chance Act. The First Step Act law language states the FSA credits are to be given up front. Therefore Based on the FSA Law please put my paperwork in for Halfway House.

___9-10-2024___                                    _____
DATE                                            SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Received on
9/24/24  EN
_____
DATE                                            _____
                                                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

THIRD COPY: RETURN TO INMATE                    CASE NUMBER: _1213375-F1_
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                CASE NUMBER: _1213375-F1_

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                        BP–229(13)
                                                              APRIL 1982

INMATE'S NAME: GURRIER, EDWIN
INMATE'S REG. NUMBER: 85474-054

3.    Summary of Investigation:

This is in response to your request for administrative remedy which was received in this office
wherein you claim that you should be submitted for halfway house at this time.

YOU WILL BE REVIEWED UNDER THE SECOND CHANCE ACT AND THE FIRST STEP
ACT FOR RRC PLACEMENT.    YOU WILL BE REFERRED IF FOUND TO BE
APPROPRIATE FOR PLACEMENT.

Your projected release date is 05-29-2028

- **Additionally, it is the policy of the Federal Bureau of Prisons, and the practice
  followed by this facility, to treat all inmates in a fair and impartial manner.**

4.    What actions were taken to resolve this matter informally:

Inmate advised of the above response.

5.    Explain reasons for no-resolution:

Inmate requested BP-9

T. Olver / Case Manager

OTV 1330.18b
ATTACHMENT 1

## INFORMAL RESOLUTION FORM (BP-8)

The Administrative Remedy Program allows you the opportunity to have an issue related to your incarceration formally reviewed. You have the responsibility to use this program in good faith and in a straightforward manner. You should make every effort to honestly attempt to informally resolve this matter verbally with staff.

Date BP-8 issued to Inmate: _8-26-24_

Correctional Counselor Initials: _HA_

INMATE NAME: _Edwin Guerrier_

REGISTER NUMBER: _85474-054_   UNIT _Camp_

Specific Issue Needing Resolution: _I am requesting that my paperwork for transfer to Halfway House / Home confinement be prepared and submitted at this time_

Explain the issue in detail: _(See Attached)_

INMATE SIGNATURE _[signature]_   DATE _8-27-24_

### TO BE COMPLETED BY CORRECTIONAL COUNSELOR

Date Received from inmate: _9-5-24_

Action Taken: _See attached_

CORRECTIONAL COUNSELOR SIGNATURE _[signature]_ DATE _9-10-24_

### TO BE COMPLETED BY UNIT MANAGER
#### Informal Resolution Reviewed

UNIT MANAGER SIGNATURE _[signature]_   DATE _9-10-24_

DATE BP-9 ISSUED TO INMATE _9-10-24_   STAFF INITIALS _HA_



RECEIVED
JAN 30 2025
PRO SE OFFICE

RECEIVED

CLERK'S OFFICE
S.D.N.Y.

Court
strict Court
of New York
use
eet
ork
10007