**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

EDWIN GUERRIER,                                :
                                               :
                    Petitioner,                :             25-CV-992 (JPC) (OTW)
                                               :
            -against-                          :             **REPORT & RECOMMENDATION TO**
                                               :             **THE HON. JOHN P. CRONAN**
E. RICKARD,                                    :
                                               :
                    Respondent.                :
-------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.       **INTRODUCTION**

        Petitioner Edwin Guerrier, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against the Warden of FCI Otisville, contending that Petitioner should have been transferred to a halfway house or home confinement on or about December 31, 2024. (ECF 1). Guerrier contends that he is eligible for prerelease custody pursuant to the First Step Act ("FSA"), 18 U.S.C. § 3632, based on a Time Credit Assessment generated by the Bureau of Prisons on September 5, 2024 (the "2024 TCA"), and that reliance on a subsequent amended TCA generated by the BOP on May 5, 2025 (the "2025" TCA), is erroneous. (ECF 1). In short, Petitioner asserts that he should be released or transferred in accordance with the terms of the 2024 TCA, which projected a release date of December 31, 2025. Respondent asserts that the 2024 TCA contained an error, and that Petitioner was provided a corrected TCA—the 2025 TCA—that correctly calculated his projected release date as October 27, 2026. Petitioner asserts that he is presently entitled to prerelease transfer pursuant to 18 U.S.C. § 3624, the Second Chance Act ("SCA"). For the reasons that follow, I respectfully recommend that the petition be **DENIED.**

1

## II.    BACKGROUND

### A.  Factual Background

#### 1.  *Petitioner's Conviction and Incarceration*

On September 24, 2020, Guerrier pled guilty to one count of conspiracy to possess with intent to distribute cocaine. *See United States v. Edwin Guerrier,* 18 Cr. 284-JSR-1, ECF No. 225 (S.D.N.Y. Sept. 24, 2020). Guerrier was sentenced to 156 months (13 years) of imprisonment and five years of supervised release. *Id*. at 2. On May 11, 2021, Guerrier arrived at FCI Otisville. (ECF 11, Ex. A). Once at FCI Otisville, Guerrier began participating in FSA programs and earning FSA time credits ("FTCs"). (ECF 11, Ex. C).

### B.  Procedural History

#### 1.  *Petitioner's Administrative Filings*

Guerrier filed an informal resolution form, also known as a "grievance," through the BOP's Administrative Remedy Program on August 27, 2024, prior to the issuance of the 2024 TCA, requesting that his "paperwork for transfer to halfway house/home confinement be prepared and submitted at this time." (ECF 1 at 18). The BOP responded, stating "you will be reviewed under the Second Chance Act and the First Step Act for RRC Placement. You will be referred if found to be appropriate for placement. Your projected release date is May 29, 2028." *Id.* at 17.

On September 5, 2024, the BOP distributed the 2024 TCA to Guerrier and other individuals at the facility. (ECF 1 at 6, 9). The 2024 TCA listed Guerrier's conditional placement date, "which is calculated by subtracting the maximum number of FTCs that Petitioner can earn

towards prerelease confinement from [Petitioner's FSA projected release date]," as December 31, 2025. (ECF 11 at ¶ 9).

Guerrier filed a second request for administrative remedy form on September 10, 2024, following the issuance of the 2024 TCA, requesting a transfer to a halfway house/home confinement "via FSA credit eligibility calculated on my FSA Time Credit Assessment sheet dated September 5, 2024…stating my FSA Conditional Placement date is December 31, 2025, not including the 12 months halfway house/home confinement [pursuant to the] Second Chance Act." *Id.* at 16. The BOP responded on September 26, 2024, stating "your current release date is May 29, 2028, via First Step Act Release." *Id.* at 15. The BOP also stated, "you have 205 Federal Time Credits to apply toward RRC placement or home confinement. As such, with a recommendation of up to 365 days pursuant to the Second Chance and applying your earned federal time credits, it is not appropriate to refer you for RRC placement at this time…." *Id.* The BOP denied Guerrier's request, stating "you may appeal to the Regional Director…within twenty calendar days of the date of this response." *Id.*

On October 3, 2024, Guerrier submitted his appeal, requesting that his transfer paperwork be prepared "based on my FSA Time Credit Assessment ("TCA") sheet dated September 5, 2024. This sheet stated my FSA Conditional Placement date is December 31, 2025, with 12 months HWH/HC plus Second Chance Act that would make the date December 31, 2024…Therefore, I qualify for [transfer to halfway house] at this time…" *Id.* at 14. The BOP responded on December 13, 2024, stating "your October 12, 2024, FTC assessment reflects you have a conditional Transition to Community Date of October 27, 2025, and are not within 60 days of expected transition to the community. As such, your RRC/HC referral will be submitted

to the RRM at a later date…" *Id.* at 12-13. The BOP denied Guerrier's appeal, stating "you may appeal to the General Counsel, Federal Bureau of Prisons… within 30 calendar days of the date of this response." *Id.* at 12-13.

Guerrier filed a subsequent appeal on January 16, 2025, stating "I am requesting transfer to RRC/HC…[U]tilizing the 'RRC placement under the second chance act' scoring sheet… I would qualify for the full 12 months consideration. Due to this 12 months additional consideration for the Second Chance Act, I am entitled to be transferred to RRC/HC [on] December 31, 2024." *Id.* at 10-11.

On October 4, 2024, BOP issued a memorandum explaining that at any person who had received an incorrect worksheet should be provided with an updated copy. (ECF 10 at 8). A subsequent Time Credit Assessment report was generated seven months later on May 5, 2025 ("2025 TCA"). (ECF 11 at 9).

### 2. Petitioner's Habeas Corpus Petition

Guerrier brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against the Warden on January 30, 2025, challenging the BOP's denial of transfer to a halfway house/home confinement pursuant to the FSA, 18 U.S.C. § 3632, and the SCA, 18 U.S.C. § 3624. (ECF 1). Guerrier bases his request for pre-release transfer on the 2024 TCA, which listed his conditional placement date as December 31, 2025.[1] *Id.* at 6, 9.

---

[1] As relevant here, a court is "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering Petitioner's submissions, the Court must interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal citations omitted); *see Rosales v. Pliler*, No. 20 Civ. 2136 (CS), 2022 WL 16833656, at *3 (S.D.N.Y. Nov. 9, 2022) (construing Section 2241 habeas petition liberally in light of special solicitude due to *pro se* litigants); *Brodie v. Pliler*, No. 22 Civ. 3821 (LGS), 2022 WL 16751908, at *3 (S.D.N.Y. Nov. 7, 2022) (same).

Respondent opposed Petitioner's petition on May 22, 2025. (ECF 10). Respondent asserts that the conditional placement dates on the 2024 TCAs were "incorrect" as determined by the BOP. *Id.* at 4. Respondent further alleges that on October 4, 2024, the BOP issued a memorandum requiring that any individual who received an incorrect TCA be provided with an updated copy. *Id.* at 4; (ECF 11, Ex. B).

Under the 2025 TCA, Petitioner's projected release date is May 29, 2029. (ECF 10 at 4). The 2025 TCA further states that Petitioner "has earned the maximum 365 days of FTCs towards early release, [making his] FSA projected release date [] May 29, 2028." *Id.* at 4. The BOP has determined that the maximum amount of FTCs Petitioner can earn towards prerelease confinement is 580 days, making October 27, 2026, the earliest date for Petitioner's prerelease confinement pursuant to the FSA. *Id.* at 4; 18 U.S.C. § 3632 (4).

## III.    DISCUSSION

### A.  Legal Standard

A writ of habeas corpus under 28 U.S.C. § 2241 is "available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 623 (2d Cir. 2001).[2] Therefore, an incarcerated individual "appropriately files a § 2241 petition when challenging the type of detention and prison conditions." *Ahmed v. Otisville*, No. 23-CV-454 (PGG) (RWL), 2023 WL 9113089, at *4 (S.D.N.Y. Dec. 13, 2023) (internal quotation marks omitted). Before filing a habeas petition under § 2241, federally incarcerated individuals must exhaust all administrative

---

[2] *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("A challenge to the *execution* of a sentence—in contrast to the *imposition* of a sentence—is properly filed pursuant to § 2241"); ("Execution of a sentence includes matters such as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, *prison transfers,* type of detention and prison conditions.") (internal quotation marks omitted).

remedies. *Carmona,* 243 F.3d 629 at 634. "The Court has the authority to review the petition and 'award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief].'" *Warr v. O'Neill,* 18-CV-0579 (CM), 2018 WL 11466747 at *1 (S.D.N.Y. Fe. 26, 2018) (citing 28 U.S.C. § 2243). "The Court is obliged, however, to construe *pro se* pleadings liberally and interpret them 'to raise the strongest arguments they suggest.'" *Warr,* 2018 WL 11466747 at *1 (citing *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)).

   1.  *The First Step Act*

Under the First Step Act ("FSA"), incarcerated individuals "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities, shall earn time credits[.]" *Torres v. Warden,* 24-3220, 2026 WL 143134, at *1 (2d Cir. Jan. 20, 2026) (citing 18 U.S.C. § 3632(d)(4)(A)). Pursuant to the FSA, the BOP administers a "risk and needs assessment system" under which it assesses incarcerated individuals for their risk of recidivism (classified as minimum, low, medium, or high risk); determines the appropriate evidence-based recidivism reduction programs ("EBRR") or productive activities ("PA") for each incarcerated individual; and assigns each accordingly. 18 U.S.C. § 3632(a)(1)-(5). Once assigned, an incarcerated individual can earn "10 days of time credits for every 30 days of successful participation" in BOP-approved EBRR or PAs. *Id.* § 3632(d)(4)(A)(i). An incarcerated individual at a minimum or low risk of recidivism, as determined by the BOP after two consecutive assessments, "shall earn an additional 5 days of time credits for every 30 days of successful participation" in EBRR or PAs. *Id.* § 3632(d)(4)(A)(ii). FTCs are "applied toward time in prerelease custody or supervised

release." *Id.* § 3632(d)(4)(C); *Torres*, 2026 WL 143134, at *1 (citing 18 U.S.C. § 3632(d)(4)(C).

FTCs "cannot be applied until it is 'earned ... in an amount that is equal to the remainder of the

[inmate's] imposed term of imprisonment.'" *Id.* at *1 (citing 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C.

§ 3624(g)(1)(A)); *Tagliaferro*, 2024 WL 3567275, at *3 (citing 18 U.S.C. § 3624(g)(1)(A)).

2.  *The Second Chance Act*

Under the Second Chance Act, federally incarcerated individuals "may serve up to one

year of their term of imprisonment in pre-release custody, such as home confinement or a

community correctional facility." *United States v. Tagliaferro*, No. 19-CR-472 (LAP), 2024 WL

3567275, at *1 (citing 18 U.S.C. § 3624 (c)). However, the BOP "retains discretion under the SCA

to decide whether and when an inmate should be placed in pre-release custody." *Tagliaferro*,

2024 WL 3567275, at *1 (citing 18 U.S.C. § 3624 (c)(4)); *U.S. v. Henderson*, 15 Cr. 487-18 (GBD),

2019 WL 1460402, at *2 (S.D.N.Y. Mar. 18, 2019) (citing 18 U.S.C. § 3624 (c)(4)). Courts have

found that § 3624 (c) "imposed an affirmative, discretionless obligation on the BOP" to transfer

individuals to pre-release custody. *Levine v. Apker*, 455 F.3d 71, 77 (2d Cir. 2006). The BOP has,

however, sole discretion to assign incarcerated individuals to particular facilities or programs.

*See* 18 U.S.C. § 3621(b); *Levine,* 455 F.3d at 88.

### B.  Analysis

Here, Guerrier seeks habeas relief under 28 U.S.C. § 2241, challenging the execution of

his sentence in reliance of the terms of the 2024 TCA. Guerrier has properly exhausted his

administrative remedies by filing grievances on August 27, 2024, and September 10, 2024, and

7

subsequently appealing any denials pursuant to the BOP's administrative remedy program.[3]

(ECF 1 at 10-18). However, Guerrier's petition is premature, as he has not met the date where

his FTCs are equal to the remainder of his sentence and can be applied (i.e., his FSA conditional

placement date). Even if the 2024 TCA were the appropriate document to utilize in calculating

Petitioner's FTCs, the petition still fails because it has been filed too early. Pursuant to the FSA

and SCA, Guerrier is not yet eligible to apply his FTCs as they are not equal to the remaining

time on his sentence for the reasons discussed above. *Torres*, 2026 WL 143134, at *2 (affirming

dismissal of habeas petition, *inter alia*, because the undisputed facts show that the petitioner's

FSA time credits had not yet equaled her remaining sentence and, therefore, she is not yet in

the final twelve months of her sentence). As discussed below, although Petitioner has

exhausted his administrative options, his petition is based on an incorrect calculation in the

2024 TCA, and is premature based on the date in the 2025 TCA.

### a. Petitioner cannot rely on the erroneous 2024 TCA

Although only a few courts have specifically dealt with habeas petitions arising out of the

BOP's 2024 TCA, they have all found that the BOP is not bound to honor the dates generated in

TCAs they deem erroneous.[4] In each case, the BOP argued that a TCA contained errors and that

the "planning" dates yielded erroneous projections. *See Frierson,* 2025 WL 410072, at *3;

---

[3] Respondent does not dispute that Guerrier properly exhausted his administrative remedies. (ECF 10 at 4); *See* Hayes Decl., ¶ 10.

[4] *Frierson v. Rardin*, 2:24-CV-12456, 2025 WL 410072, at *6 (E.D. Mich. Feb. 5, 2025) ("Finally, the BOP was not bound to honor the original conditional placement…contained in the earlier FTC worksheet once the BOP determined that the new Planning Section on the FTC worksheet was creating errors."); *Stinson v. Martinez*, No. 2:23-CV-0761, 2024 WL 4969169, at *5 n.2 (W.D. La. Nov. 12, 2024), report and recommendation adopted, No. 2:23-CV-0751, 2024 WL 4965618 (W.D. La. Dec. 3, 2024) ("…the formula in the BOP calculation system [was] not yet correct and was released on the [September 2024] FSA Time Credit Assessments in error, resulting in an erroneous projection."); *Robinson v. Warden, FCI Danbury*, No. 3:24-CV-1167 (SRU), 2025 WL 777275, at *3 n.4 (D. Conn. Mar. 11, 2025) ("the BOP advised all inmates that the worksheets provided in September 2024 were under revision because the dates included in the "Planning" section were incorrect.")

*Stinson,* 2024 WL 4969169, at *5 n.2; *Robinson*, 2025 WL 777275, at *3 n.4. Thus, "because the initial conditional placement date was erroneous, Petitioner would not be entitled to habeas relief based on the BOP's failure to honor that original [erroneous] date." *Frierson*, 2025 WL 410072, at *6.

The BOP asserts here, as they did in *Frierson, Robinson, and Stinson,* that "the conditional planning dates provided on all FSA Time Credit Assessments generated in early September 2024 yielded inaccurate conditional planning dates." (ECF 11 at 2, ¶ 4). Respondent explains that in September 2024:

> A new 'Planning' section was added to FSA Time Credit Assessments. Shortly thereafter, BOP determine[d] that the conditional planning dates on FSA Time Credit Assessments that were generated in early September 2024 were incorrect. As a result, on October 4, 2024, BOP issued a memorandum titled First Step Act (FSA) Planning Dates. This memorandum advised that any inmate who had received an incorrect FSA Time Credit Assessment should be provided with an updated copy.

*Id.* at 2, ¶ 5.

Guerrier received an incorrect TCA report that he subsequently relied on when making his petition for transfer to home confinement. (ECF 10 at 8). While Respondent acknowledges that the 2024 TCAs contained an error, they fail to explain the error with particularity, instead simply state that the "dates generated in early September 2024 were incorrect," and "advised any inmate who has received an incorrect [] TCA should be provided with an updated copy." (ECF 11 at ¶¶ 4-5). Here, as in *Frierson, Stinson,* and *Robinson*, the BOP is not bound by the inaccurate conditional placement date listed in the 2024 TCA and Guerrier is not entitled to habeas relief based on the BOP's failure to honor its calculations in the 2024 TCA. *See Frierson,* 2025 WL 410072, at *6; *Stinson,* 2024 WL 4969169, at *5 n.2; *Robinson*, 2025 WL 777275, at *3

9

n.4. Accordingly, this Court will consider whether Guerrier is eligible for habeas relief pursuant to the TCA generated in the 2025 TCA.

### C. Petitioner is not yet eligible to apply the credits he has earned

In *Torres v. Warden,* the Second Circuit affirmed the district court's ruling that a petitioner cannot apply FSA time credits until she earns credit days equal to her remaining sentence. *Torres*, 2026 WL 143134, at *1; *Tagliaferro*, 2024 WL 3567275, at *3. The court reasoned that, because the remainder of Torres's imposed term of imprisonment remained greater than the FSA credits she had earned, she was not yet eligible for transfer. *Torres*, 2026 WL 143134, at *1. Further, the court held that Torres was not yet eligible for relief under the SCA, which provides that federally incarcerated individuals may serve up to twelve months of their term of imprisonment in pre-release custody, because Torres had more than twelve months left of her term of imprisonment. *Id.* at *2 (citing 18 U.S.C. § 3624(c)(1)).

Here, as in *Torres*, Petitioner is not yet eligible under the FSA for pre-release custody because he has not earned FTCs equal to the remainder of his sentence, and he is not yet eligible under the SCA because he has more than twelve months left of his term of imprisonment. *See Torres*, 2026 WL 143134, at *1. Petitioner is projected to be released on May 29, 2029, according to the 2025 TCA. (ECF 11 at 9). Since he has more than twelve months left on his term of imprisonment, Petitioner is not yet eligible for pre-release custody under the SCA.

The 2025 TCA states that Petitioner has earned a total of 690 FTCs. (ECF 11 at 8). Pursuant to the FSA, Petitioner may eventually apply a maximum of 365 credits to reduce his sentence by one year, from May 29, 2029, to May 29, 2028, making his FSA projected release

date May 29, 2028. *Id.* at 9. The remaining FTCs can eventually be applied toward a transfer to prerelease custody, including a halfway house or home confinement. *Id.* at 6. However, for Petitioner to be eligible to apply any of his FTCs, the FTCs must be equal to the remaining term of imprisonment. 18 U.S.C. § 3624(g)(1)(A). As of May 5, 2025, Petitioner, like *Torres*, has not yet earned FTCs in an amount equal to the remainder of his sentence so his 690 FTCs cannot yet be applied. (ECF 11 at 8-9). Accordingly, when Petitioner has earned an amount of FTCs equal to the remainder of his sentence, then he will be eligible to apply them.[5]

### D. BOP retains discretion under the SCA to grant pre-release custody

Under the SCA, the BOP's decision to place an incarcerated individual in pre-release custody is discretionary. *Tagliaferro*, 2024 WL 3567275, at *1; *Id.* § 3624 (c)(4). The SCA is clear that "nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." *Id.* § 3621 (4). The BOP "retains discretion under the [SCA] to decide whether and when an inmate should be placed in pre-release custody." *Tagliaferro*, 2024 WL 3567275, at *1 (internal quotation marks omitted). Indeed, "the plain language [of the SCA] does not mandate that the BOP <u>must</u> transfer an inmate to home confinement under any circumstances." *Ahmed,* 2023 WL 9113089, at *8. (emphasis added). Accordingly, the court lacks the authority to order an individual's transfer to pre-release custody. *See United States v. Norville,* No. 10 CR 1046 (VM), 2022 WL 110291, at *1 (S.D.N.Y. Jan. 12, 2022); *Bortner v. Stover*, No. 3:24-cv-281 (VAB), 2024 WL 3595922, at *3 (D.

---

[5] Under the 2025 TCA, Respondent calculated **October 27, 2026**, as Petitioner's FSA Conditional Placement Date. (ECF 11 at 9). This date assumes that Petitioner will continue to earn 15 FTCs monthly for 17 months, giving him a total of 945 FTCs. (ECF 10 at 7). On October 27, 2026, Petitioner is projected to have earned 945 FTCs, which will equal the remaining days left on his sentence (May 29, 2029). *Id.* On October 27, 2026, Petitioner is projected to be eligible to apply the remaining 580 FTCs for prerelease custody under the FSA, which is 580 days prior to his FSA Projected Release Date on May 29, 2028. (ECF 11 at 8-9)*.*

Conn. July 31, 2024). Therefore, even if Petitioner were currently eligible for pre-release custody—which he is not—the Court cannot order BOP to order Petitioner's transfer.

Notwithstanding this error, the courts lack the power to release an incarcerated individual to home confinement. *Frierson*, 2025 WL 410072, at *5. ("To the extent that Petitioner asks this Court to release him specifically to home confinement, this Court lacks the power to do so.") Moreover, there is no recognized liberty interest "in the opportunity to earn good time credits where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit." *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000). "The prerelease custody statute does not give federal inmates an enforceable entitlement to any particular form of prerelease custody and provides merely an authorization, rather than a mandate, for nonprison confinement at the end of a federal sentence." *Frierson*, 2025 WL 410072, at *5. Although the BOP has been authorized by Congress to utilize pre-release custody under § 3632(g)(2), "this is left to the discretion of the Bureau of Prisons, and there is no statutory requirement that any inmate be designated to home confinement for any portion of his sentence." *Id.; Stinson*, 2024 WL 4969169, at *4 ("BOP is granted discretion to allocate these credits to either prerelease custody or supervised release.") (citing § 3632 (d)(4)(C)); *Robinson*, 2025 WL 777275, at *3 ("'Indeed, district court[s] within the Second Circuit considering similar claims have uniformly held that decisions regarding pre-release custody [under the SCA] rest within the discretion of the BOP and that they lack authority to order a transfer to pre-release custody.'") (citing *Bortner v. Stover*, 2024 WL 3595922, at *3 (D. Conn. July 31, 2024)).

**IV.     CONCLUSION**

For the foregoing reasons, I respectfully recommend that the petition be **DENIED**, and this action be dismissed without prejudice.

**V.      OBJECTIONS**

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable John P. Cronan, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Cronan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,

*/s/ Ona T. Wang*

Dated: April 27, 2026                                         **Ona T. Wang**
New York, New York                          United States Magistrate Judge

13